IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:06-cr-30 |
| | ) | |
| MARK ANTHONY TINDELL | ) | |

## **MEMORANDUM AND ORDER**

This matter came before the court on January 17, 2007, on defendant's motion to set aside guilty plea [Doc. 19]. After carefully considering the parties' briefs [Docs. 20 and 29], the arguments of counsel, and the entire record in this case, especially the transcript of the change of plea hearing held on April 17, 2006 [*see* Doc. 30], the court orally granted defendant's motion and reset this matter for trial on **April 17, 2007**. The purpose of this memorandum and order is to clarify further the court's reasons for doing so in light of the applicable law.

I.

On March 7, 2006, the grand jury returned a three-count indictment charging the defendant as follows: (1) possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one); (2) possession

with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (count two); and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (count three) [*see* Doc. 1]. On April 7, 2006, Paula R. Voss, Assistant Federal Community Defender, was appointed to represent the defendant at his initial appearance and arraignment [*see* Docs. 2 and 3]. On April 17, 2006, the defendant signed a cooperation plea agreement [*see* Doc. 9 (filed under seal)] and entered pleas of guilty to counts two and three of the indictment.[1]

The parties and the court were aware at the time of the guilty plea that the defendant had a lengthy criminal history and would likely qualify as a career offender under the Sentencing Guidelines.[2] Thus, the only way that the defendant could obtain any potential relief from an onerous sentence was to assist law enforcement authorities in on-going criminal investigations in anticipation of receiving a motion for downward departure for substantial assistance. *See* Fed. R. Crim. P. 35(b). To that end, the United States agreed that it would not oppose the defendant's motion for release pending sentencing after entry of the guilty plea to

---

[1] Pursuant to that plea agreement, the government agreed to dismiss count one at sentencing.

[2] This prediction turned out to be correct as the defendant, according to the presentence investigative report (PSR), was facing a guideline range of 262 to 327 months because he was classified as a career offender.

2

allow defendant time to undertake those activities. Paragraph 14 of the plea agreement specifically provides as follows:

> 14. As part of his plea agreement, the United States agrees to not oppose the Defendant's motion for release pending sentencing. The defendant understands that under the provisions of Title 18 U.S.C. § 3143, *et seq.*, he would normally be held without bond and that the United States is agreeing to his release solely to allow the defendant, as part of his plea agreement, to assist law enforcement officials in the investigation of serious ongoing criminal activity. He further understands and expressly agrees that if, in the opinion of the United States, his continued release becomes unnecessary for any reason, his bond will be revoked and he will be returned to custody. By signing this plea agreement he also irrevocably agrees and consents that upon *ex parte* application of the United States[,] an order revoking his bond will immediately be entered by the court and an arrest warrant issued. He further understands and expressly agrees that his agreement pursuant to this paragraph will be a condition of his release and will be incorporated into the court order setting such conditions.

[*See* Doc. 9, pp.5-6 (filed under seal)].

However, things did not go as the parties anticipated after entry of the guilty plea. Upon reviewing the defendant's extensive criminal history and given the further fact that a number of firearms were present when the defendant was arrested, this court could not in good conscience acquiesce to defendant's request - even with the government's approval - that he be released pending sentencing. Consequently, the defendant was ordered immediately into custody at the

conclusion of the change of plea hearing. A review of the record reflects the following exchange regarding defendant's detention at the conclusion of that hearing:

| | |
|---|---|
| The Court: | ... Now, the U.S. Attorney wants to turn this man loose; don't you? |
| Mr. Stone [AUSA]: | We do, Your Honor, for good cause. |
| The Court: | What? |
| Mr. Stone: | We believe we do, Your Honor, for good cause. We believe, hopefully, he can do a little bit better than that. You don't think so? |
| The Court: | Not on this kind of charge, not in the condition that he is in. I think we need to get on and get him in a nice facility somewhere and get him in a clean place where he can get some good food, get some medical treatment for his back, and let him get back on with his life and get this served and get back home. He's out here trying to do something that I don't think is very good. He needs to keep on a straight road. |
| Ms. Voss: | Your Honor, if I could please. We have had some extensive conversations with the agents involved in this case and they have some very specific things they would like him to try to do. And our plea today was on the basis that we -- |
| The Court: | They are going to have to find somebody else, Ms. Voss, and I hope they do. I'm not going to respond to that. |

4

|            | I'm not going to stick my neck out for him. I am looking at his record. Judges have been sticking their neck out for him for a long time and he disappointed them every time. And I'm not going to have that on my conscience. That's just the way I feel about it. He gets out here and kills somebody in an automobile -- |
|---|---|
| Ms. Voss:  | He lets his girlfriend do his driving or people pick him up. He has a job waiting for him. We brought him in here as quickly as we did on the premise that we could get him out to get something done here -- |
| The Court: | Do you want to withdraw your plea? |
| Ms. Voss:  | We probably will need to do that, Your Honor, on the possibility of advice of counsel. I was under the impression and I let him to believe under federal conditions he -- |
| The Court: | Did he understand that I had to approve that? |
| Ms. Voss:  | Yes. But I thought if we had the agreement of counsel and conditions from Pretrial that we could do that for him. |
| The Court: | Ordinarily, I would. But, I mean, this man is a career criminal. |
| Ms. Voss:  | Well, yes he is. I mean, under the Guidelines he is, which is even more of a reason why he was willing to try to go and do something for himself. |
| The Court: | Ms. Voss, you have a very tender heart. |

| | |
|---|---|
| Ms. Voss: | Well, I've spent quite a bit of time with Mr. Tindell. And one of the things that most impresses me is what he has told the court here today. |
| The Court: | I know. |
| Ms. Voss: | He's glad that it happened to get him off of that [oxycodone prescription drugs]. I have -- |
| The Court: | I know. He's not the first man I've heard say that. |
| Ms. Voss: | Pardon? |
| The Court: | That isn't anything new. |
| Ms. Voss: | Well, it is for him. I mean, he is very motivated not to get back on. He has a child on the way in a couple of months. He's got a very specific plan. It's not like we are setting him out there to see if we can do something. He has a very specific plan of what he can do for these agents.<br><br>And, like I've said, we spent a considerable amount of time with him the other night. He knows that as soon as they are done with him or if he is not producing, he will turn himself back in immediately. He is from this area. |
| The Court: | Well, maybe the government will make a motion -- |
| Mr. Stone: | I'm sorry. |
| The Court: | -- for a downward departure based on his cooperation, if he can make some phone calls around or something. But to let him |

| | |
|---|---|
| | out among the general population, I'm not going to do it. |
| Ms. Voss: | Well, we will have to consider that; and, as his attorney, I'd like a chance to talk to him first about that. |
| | Because truly it was premised on the belief -- |
| The Court: | I understand. You explained it. |
| Ms. Voss: | - he could come in here and he could do what it was that we had liked up to do. |
| The Court: | Well, he won't give up any -- |
| Ms. Voss: | He's willing to. |
| The Court: | I'm not going to do it. I'm sorry. Ordinarily, I would. But I'm not going to do it in this case. |
| Ms. Voss: | Your Honor, if we could get him on some kind of program -- |
| The Court: | No. |
| Ms. Voss: | -- where he was doing some type of drug rehabilitation. |
| The Court: | No. Rehabilitation? |
| Ms. Voss: | Well, he needs to see a doctor other than a pain doctor because -- |
| The Court: | Well he's going to see one in the penitentiary and they'll take care of him. And if he needs an operation, it's your cost and my cost. And that's the way it will be. |

7

|            | You can try and attempt it. Leave him over there at Blount County. He can sit over there until we get a trial and we will try him. But it's going to be bad. |
|------------|---|
|            | You might get some kind of a deal out of them, I don't know. |
| Ms. Voss:  | Probably not, without some cooperation. |
| The Court: | Well, I told you how far I would cooperate. He can make phone calls and that kind of thing. |
| Ms. Voss:  | But that isn't what they envisioned him doing, Your Honor. Like I said, they had a specific plan. |

. . .

[*See* Doc. 30, pp.21-26]. Without question, the defendant's release pending sentencing was a key component of this plea agreement.

Moreover, in reviewing this plea agreement, it is readily apparent that the defendant had put all of his proverbial eggs in one basket. Among other things, the plea agreement provides that defendant can file neither a direct appeal nor any motions or pleadings pursuant to 28 U.S.C. § 2255. And, although not discussed in the plea agreement, the defendant did not raise any issues he might have otherwise raised regarding the suppression of evidence [*see* Doc. 20, p.2]. Therefore, the only possible relief the defendant could receive in this case was premised on the

8

possibility that the government might file a motion for downward departure based upon defendant's anticipated substantial assistance. But again, the defendant was no longer in a position to do so because the court was extremely concerned about his release prior to sentencing.

Even though it appeared, as noted above, that the defendant might move to withdraw his plea of guilty, the court, nevertheless, set this matter for sentencing on July 13, 2006, at the conclusion of that hearing. Nothing further happened in this case, however, until June 16, 2006, when the court received a *pro se* letter from the defendant to review the situation involving AFCD Voss [*see* Doc. 11]. Essentially, the defendant complained about the fact that AFCD Voss had failed to file his motion to withdraw his guilty plea as he had specifically and repeatedly instructed her. In fact, attached to his motion is a copy of a letter sent to AFCD Voss on May 22, 2006, requesting that she do so and expressing frustration with the fact that he had received no information confirming that filing [*see* Doc. 11-2].

In view of that development, the court then converted the July 13th sentencing date to one for the hearing of defendant's *pro se* motion. However, upon further consideration of this matter the day before that hearing, the court decided that no hearing was necessary and entered an order on July 12, 2006, allowing AFCD Voss to withdraw as counsel for the defendant and substituting Attorney

Patrick T. Phillips as counsel for the defendant [*see* Doc. 13]. Additionally, that order also permitted the defendant 20 days from July 12, 2006, within which to file a motion to withdraw his guilty plea along with a supporting brief, "if the defendant still wishes for his new attorney to file a motion to withdraw his guilty plea ..." . [*Id.*].

The record next reflects that Attorney Phillips did not file any such motion within that time frame. Rather, on August 10, 2006, Mr. Phillips filed a motion seeking an extension of time to file objections to the PSR along with a supporting memorandum [*see* Docs. 14 and 15]. There being no opposition by the government [*see* Doc. 16], the court granted that motion on August 28, 2006 [*see* Doc. 17]. Before receiving any further filings from Attorney Phillips, however, the defendant filed a second *pro se* motion to appoint new counsel on August 29, 2006 [*see* Doc. 18]. On August 31, 2006, Attorney Phillips filed the pending motion to set aside the guilty plea and a supporting memorandum [*see* Docs. 19 and 20]. The government points out, of course, that this motion was approximately 30 days late and was filed without leave of court.

The court next set a hearing on defendant's second *pro se* motion to appoint new counsel for September 21, 2006. On September 8, 2006, the government filed a motion for extension of time to file a response to defendant's motion to set aside the guilty plea [Doc. 21] so that the court could resolve the

representation issue before addressing the merits of the motion to withdraw the guilty plea [*see* Doc. 21]. On September 11, 2006, the court granted the government's motion [*see* Doc. 22].

On October 5, 2006, Attorney Phillips filed a motion to withdraw as attorney for the defendant [*see* Doc. 24]. After several scheduling difficulties, primarily the result of the poor health of the undersigned, the hearing on defendant's *pro se* motion, as well as Attorney Phillips' motion, was reset for October 16, 2006, before the Honorable H. Bruce Guyton, United States Magistrate Judge. At that hearing, Judge Guyton took the following actions: Attorney Robert Vogel was substituted in place of Attorney Phillips as counsel for the defendant; the defendant was given until November 6, 2006, to supplement his motion regarding the withdrawal of his guilty plea; and the government was given until November 20, 2006, to file a response to any pretrial motion [*see* Doc. 26]. After further extensions, the government timely responded to defendant's motion to set aside the guilty plea on December 5, 2006 [*see* Doc. 29].

II.

A defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This rule is designed

"to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quotation and citation omitted); *see also United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998) (same). Withdrawal of a plea is appropriate where there is real confusion or misunderstanding of the terms of the agreement. *See, e.g., United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000); *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990).

"A plea bargain ... is contractual in nature and subject to contract-law standards." *Mandell*, 905 F.2d at 973 (quotation and citation omitted). A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea. *United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001). "'It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'" *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978) (per curiam)).

The Sixth Circuit has set forth a number of factors to determine whether a defendant meets the burden of proving that the withdrawal of his guilty plea is for a fair and just reason, including:

>    (1)   the amount of time that elapsed between the plea and the motion to withdraw it;
>
>    (2)   the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
>
>    (3)   whether the defendant has asserted or maintained his innocence;
>
>    (4)   the circumstances underlying the entry of the guilty plea;
>
>    (5)   the defendant's nature and background;
>
>    (6)   the degree to which the defendant has had prior experience with the criminal justice system;  and
>
>    (7)   potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *cert denied*, 513 U.S. 1115 (1995).  "The factors listed are a general, non-exclusive list and no one factor is controlling."  *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).  The court will now discuss each of these factors.

With respect to the first factor, the amount of time that elapsed between the plea and the motion to withdraw it, the record reflects, as previously noted, that the defendant pled guilty on April 17, 2006, and that the written motion to withdraw his plea was filed on August 31, 2006, approximately three and a half months later. The Sixth Circuit has observed that, "the shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time. *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996). Furthermore, the court recognizes that the Sixth Circuit has regularly upheld the denial of motions to withdraw based on considerably less delay than is present in this case with respect to the filing of the written motion to withdraw. *See, e.g., United States v. Valdez*, 362 F.3d 903, 919 (6th Cir. 2004) ("first, [defendant's] unjustified 75-day delay alone supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (calling a 77-day delay the "strongest factor" supporting the district court's denial of defendant's motion); *Baez*, 87 F.3d at 807 (calling a 67-day delay the "strongest factor" supporting the district court's denial of defendant's motion); and *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (terming a 55-day gap a "lengthy delay").

However, in the court's view, this case cannot be judged solely by comparing the dates of the entry of the guilty plea and the filing of the written motion.

It must be emphasized that defendant's original attorney, AFCD Voss, indicated to the court immediately after the change of plea hearing that a motion to withdraw would probably be filed. Moreover, defendant sent two *pro se* letters, *i.e.*, motions, to the court indicating his dissatisfaction with the fact that neither one of his first two court-appointed attorneys had filed the motion to withdraw his guilty plea as he had specifically and repeatedly requested them to do. In fact, according to Mr. Tindell's letter dated May 22, 2006, to AFCD Voss, he had "repeatedly requested for you to file a <u>motion to withdraw</u> my plea agreement." [Doc. 11-2]. Yet, AFCD Voss failed to do so and Attorney Phillips did not do so until August 31, 2006. Under these circumstances, the line of demarcation between the entry of the guilty plea and the filing of the motion to withdraw the guilty plea is somewhat blurred. In the court's view, the date of May 22, 2006, should be considered the date of the filing of the motion. Consequently, the court finds that this first factor does not weigh against the defendant and, on the contrary, supports defendant's request to withdraw the guilty plea. From the defendant's perspective, there was real confusion or a misunderstanding of the terms of the plea agreement. *See Wells*, 211 F.3d at 995; *Mandell*, 905 F.2d at 973.

The second factor the court considers to determine whether the defendant's motion to withdraw is for a fair and just reason is the presence (or absence) of a valid reason for failing to move for withdrawal earlier in the

proceedings. Here, defendant contends that he directed both of his first two attorneys to file a motion much sooner; yet, both failed to do so. Thus, the court concludes that there is a valid reason for defendant's failure to file his motion to withdraw earlier.

The third factor, and indeed a key factor, is whether the defendant has asserted or maintained his innocence. Here, the defendant has never asserted or maintained his innocence. In fact, the defendant repeatedly acknowledged his guilt during the change of plea colloquy. This factor, therefore, supports the government's position.

The circumstances underlying the entry of the guilty plea comprise the fourth factor which the court must consider. Again, the court has carefully reviewed the transcript of the proceedings on April 17, 2006, and that review indicates that a key component of the plea agreement was that the defendant would be released pending sentencing so that he would have an opportunity "to assist law enforcement officials in the investigation of serious ongoing criminal activity." [*See* Doc. 9, p.6 (filed under seal)]. Because this court was of the definite and firm opinion that this was not an appropriate case for defendant's release pending sentencing, the defendant was denied a carefully bargained for part of this plea agreement. And for this defendant, the consequences could not have been any more serious. As

previously noted, the defendant is subject to being sentenced as a career offender and the defendant, in his plea agreement, gave up any right to a direct appeal or collateral attack of his conviction or sentence except for very limited circumstances. The defendant also gave up his right to file a suppression motion. Hence, the court concludes that the circumstances surrounding the defendant's entry of his guilty plea weigh heavily in favor of setting aside this guilty plea.

      The fifth factor the court considers to determine whether defendant's motion to withdraw the guilty plea is for a fair and just reason is defendant's nature and background. Although the defendant, through counsel, now claims that he was addicted to drugs at the time of his guilty plea and that he is "functionally illiterate" [*see* Doc. 20, p.1], the transcript of the plea colloquy indicates that this court took great pains to insure that the defendant completely understood what he was doing when he entered this guilty plea. The real issue here is the fact that the defendant pled guilty with the idea that he would be released pending sentencing to attempt to substantially assist the government in order to receive a motion for downward departure. Thus, while the court rejects defendant's contention that he did not completely understand what he was doing at the time he entered his guilty plea, the court nevertheless agrees with the defendant that he was misled into believing that he would be released after entering that guilty plea.

17

The sixth factor the court considers to determine whether defendant's motion to withdraw should be granted is the degree to which defendant has had prior experience with the criminal justice system. Here, the defendant has an incredibly long criminal record, thereby demonstrating extensive experience with the criminal justice system. However, that extensive experience with the criminal justice system no doubt indicated to the defendant that this court would likely accept the agreement of counsel that the defendant would be released pending sentencing. Probably no one was more surprised than the defendant when this court rejected that agreement. Accordingly, this factor cuts in favor of the defendant under these circumstances.

Finally, the last factor the court considers to determine whether the defendant's motion to withdraw the guilty plea is for a fair and just reason is the potential prejudice to the government if the motion to withdraw is granted. In this case, the government argued during the hearing that prejudice would result because this case is almost a year old and the government would have to spend considerably more time and resources in tracking down witnesses and reviewing evidence. Yet, the government indicated that it would be ready to try this case as early as January 29, 2007. Under these circumstances, it cannot be said that the withdrawal of this guilty plea would prejudice the government.

III.

After giving appropriate weight to each of these factors, the court is constrained to hold that the defendant's motion to withdraw his guilty plea must be granted. Again, the defendant did not receive what he thought he was bargaining for when this court ordered him into custody following his change of plea, thereby preventing him from attempting to assist the government in a substantial way in various ongoing criminal investigations. Under these circumstances, the only way the court can correct this injustice is to allow the defendant to withdraw his guilty plea and proceed to trial. Otherwise, the defendant would be sentenced with no right of appeal and with no opportunity to raise his suppression issues.

IV.

With respect to the trial date, the court would note for the record that this case was set for **April 17, 2007**, upon the representation of defendant's counsel that he would be unable to try this case before that date. Thus, the court finds that the ends of justice served by granting a continuance of this length outweigh the best interests of the public and this defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). In particular, the court finds that the failure to grant a continuance of this length would unreasonably deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, if this case were set on this court's docket any earlier. *Id.* § 3161(h)(8)(B)(iv).

Therefore, the court finds that the time from the hearing on defendant's motion to withdraw his guilty plea (January 17, 2007) to the new trial date (April 17, 2007) is fully excludable pursuant to the Speedy Trial Act.

**E N T E R :**

                                                         *s/ James H. Jarvis*
                                          UNITED STATES DISTRICT JUDGE